UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WESCO INSURANCE COMPANY, and 102-19 ROOSEVELT REALTY, LLC,

Plaintiffs,

-against-

CONTINENTAL CASUALTY COMPANY,

Defendant.

**MEMORANDUM & ORDER**
**24-CV-3748 (NGG) (MHH)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Wesco Insurance Company (together with its insured) commenced the above-captioned action against Defendant Continental Casualty Company to recover the costs and fees it incurred in defending its insured in a separate lawsuit. (Compl. (Dkt. 1) ¶¶ 1-3, 9.) Following the close of discovery, the parties cross moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (Def.'s Mot. for Summ. J. ("Def.'s Mot.") (Dkt. 35-22); Pls.' Opp. (Dkt. 35-50); Def.'s Reply (Dkt. 35-25); Pls.' Cross-Mot. for Summ. J. ("Pls.' Cross-Mot.") (Dkt. 35-48); Def.'s Mem. in Opp. & in Further Support of Def.'s Mot. (Dkt. 35-24); Pls.' Reply (Dkt. 35-51).)

For the reasons set forth below, the court GRANTS Defendant Continental Casualty Company's motion for summary judgment and DISMISSES the Complaint WITH PREJUDICE. The court does not address the plaintiffs' cross-motion, which is DISMISSED AS MOOT.

[1] All subsequent references to Rules are to the Federal Rules of Civil Procedure. When quoting cases, unless otherwise noted, all alterations are adopted and all citations, emphases, internal quotation marks, and ellipses are omitted.

# I. BACKGROUND

## A. Factual Background

The following facts are not in dispute.[2]

### 1. The Parties

Plaintiff Wesco Insurance Company ("Wesco Insurance") is a Delaware insurance company headquartered in Ohio. (Compl. ¶ 1; Answer (Dkt. 13) ¶ 1.) At all relevant times, Wesco Insurance provided commercial general liability insurance to Plaintiff 102-19 Roosevelt Realty, LLC ("Roosevelt Realty" and together with Wesco Insurance, "Plaintiffs"). (Pls.' 56.1 ¶¶ 51-52.) Roosevelt Realty is a New York real estate company and the owner and landlord of commercial property in Queens—including a first-floor commercial space located at 102-19 Roosevelt Avenue, Corona, New York 11362 (the "premises"). (Compl. ¶ 2; Answer ¶ 2; Pls.' 56.1 ¶ 12.) Hector Florimon is Roosevelt Realty's principal and managing member. (Pls.' 56.1 ¶ 11; Lease (Dkt. 35-17 at ECF p. 2) at 4.)

Defendant Continental Casualty Company ("Continental Casualty") is an Illinois insurance company with its principal place of business in Chicago. (Compl. ¶ 3; Answer ¶ 3.) At all relevant times, Continental Casualty provided insurance coverage to non-party National Vision Care, Inc. d/b/a National Optical Fashion

[2] The following undisputed facts are drawn, primarily, from the material facts set forth in the parties' respective Local Rule 56.1 Statements on Defendant Continental Casualty Company's motion for summary judgment, (Def.'s 56.1 (Dkt. 35-23); Pls.' 56.1 (Dkt. 35-49)). In reviewing the motion, the court also "exercised its discretion to conduct an assiduous review of the record in order to consider what the parties have failed to point out in [these statements]," and considered "only facts that have been established by admissible evidence." *Windward Bora, LLC v. Regalado*, 751 F. Supp. 3d 122, 127 (E.D.N.Y. 2024) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)); *see also McGowan v. Stanley*, No. 23-CV-7769, 2024 WL 5038633, at *2 (2d Cir. Dec. 9, 2024) (summary order) (same).

("National Vision") pursuant to the terms and conditions set forth in a general commercial liability policy effective from April 19, 2018 to April 19, 2019 (the "National Vision-Continental Casualty Policy"). (Pls.' 56.1 ¶¶ 44-45; Def.'s 56.1 ¶¶ 28, 43; Nat'l Vis.-Cont'l Cas. Pol'y (Dkt. 35-21).) Mariangelique Chevres is National Vision's owner and manager. (Pls.' 56.1 ¶ 20; Def.'s 56.1 ¶ 27.)

2. The Rider

Ms. Chevres is an optometrist. (Pls.' 56.1 ¶ 13.) On March 1, 2018, she signed—in her own name—a rider to a lease for the premises to be "use[d] and occup[ied]" as "an optical boutique store." (Rider to Lease Dated 3/1/2018 ("Rider") (Dkt. 35-17 at ECF p. 5) at 1, 3, 26; *see also* Pls.' 56.1 ¶ 30; Def.'s 56.1 ¶ 13.).

Prior to the execution of the actual lease, the rider required Ms. Chevres (individually) to take out insurance "in the name and for the benefit of" the premises' landlord, Roosevelt Realty. (Rider at 4.) According to the rider, no lease would be executed (nor deemed binding) until the requisite insurance policy was "furnish[ed]," "deliver[ed]," and deemed "in form satisfactory" to Roosevelt Realty. (*Id.* at 5.)

3. The National Vision-Continental Casualty Policy

Ms. Chevres, however, did not procure such a policy. Instead, National Vision procured a general commercial liability policy from Continental Casualty—i.e., the National Vision-Continental Casualty Policy. (Pls.' 56.1 ¶¶ 44-45; Def.'s 56.1 ¶¶ 28, 43; *see also* Nat'l Vis.-Cont'l Cas. Pol'y.)

The Policy expressly designates and identifies the named insured as "National Vision Care Inc." (not Ms. Chevres). (Nat'l Vis.-Cont'l Cas. Pol'y at ECF pp. 6-11.) The "Schedule of Locations

and Coverage" lists the premises—described therein as "Optometrists [sic] Offices"—as the insured location on the Policy. (Nat'l Vis.-Cont'l Cas. Pol'y at ECF p. 8; Def.'s 56.1 ¶ 44.)

The Policy also contains a "Blanket Additional Insured - Liability Extension" that extends coverage to "additional insureds." (Nat'l Vis.-Cont'l Cas. Pol'y at ECF pp. 76-80; *see also* Pls.' 56.1 ¶ 49; Def.'s 56.1 ¶ 45.) The provision defines "additional insureds" to include "any person or organization . . . whom you [National Vision] are required to add as an additional insured on this policy under a written contract or agreement" that is both "[c]urrently in effect or becoming effective during the term of this policy" and "executed prior to the 'bodily injury.'" (Nat'l Vis.-Cont'l Cas. Pol'y at ECF p. 76; Pls.' 56.1 ¶ 49; Def.'s 56.1 ¶ 45.)

4. The Lease

Notwithstanding Ms. Chevres' apparent failure to satisfy the rider's insurance procurement provisions, on April 20, 2018, Ms. Chevres and Roosevelt Realty fully executed the lease. (Lease at 1, 4; Rider at 27.)

The lease incorporates and attaches the rider, whose terms control.[3] (Lease at 1; Rider at 1.)

Both the lease and rider define "the Tenant" as Ms. Chevres individually (as opposed to National Vision or as Ms. Chevres and National Vision collectively), identify Roosevelt Realty and Ms. Chevres (and not National Vision) as the contracting parties, and are signed by Ms. Chevres in her own name (rather than 'on behalf of' National Vision). (Lease at 1, 4; Rider at 1, 26.)

[3] Although not relevant to the resolution of the material dispute in this case, the rider states that "any conflict" between any of its provisions and "any of the terms" of the lease, "shall be resolved in favor of the provisions of [the] Rider." (Rider at 1.)

5. The Underlying Action

On February 20, 2020, Roosevelt Realty and National Vision were sued in a personal injury lawsuit in the New York Supreme Court, Queens County for damages arising from an alleged trip and fall on the sidewalk outside the premises on March 19, 2019 (the "Underlying Action").[4] (Def.'s 56.1 ¶ 1; *see also* Underlying Compl. (Dkt. 35-3).)

Each entity was subsequently assigned defense counsel by its respective liability insurance carrier: Wesco Insurance assigned defense counsel to its insured, Roosevelt Realty, and Continental Casualty assigned defense counsel to its insured, National Vision. (Def.'s 56.1 ¶¶ 8-9, 19; Harding Decl. (Dkt. 35-28) ¶¶ 12-13; Cont'l Cas. Ltr. to Nat'l Vis. Dated 7/9/2020 (Dkt. 35-43) at 3.)

Both the National Vision-Continental Casualty Policy and the lease for the premises were in effect on the date that the alleged underlying bodily injuries occurred. (Pls.' 56.1 ¶ 31; Def.'s 56.1 ¶¶ 14, 47.[5])

6. Wesco Insurance's Tenders to Continental Casualty

On May 22, 2020, Wesco Insurance received notice of the Underlying Action and "immediately" began to investigate the underlying claims. (Harding Decl. ¶ 14.)

On June 8, 2020, Wesco Insurance received a copy of the lease from Roosevelt Realty. (Def.'s 56.1 ¶ 10; Harding Decl. ¶ 15.) On

---

[4] The Underlying Action is captioned *Luz M. Rodriguez De Nunez, Plaintiff, against 102-19 Roosevelt Realty, LLC, and National Vision Care Center, Inc. d/b/a National Optical Fashion, Defendants,* Index No. 702942/2020. (Underlying Compl. (Dkt. 35-3).)

[5] Here, Paragraph 47 refers to the final paragraph on page 18 of Continental Casualty's Local Rule 56.1 Statement, which is misnumbered as paragraph "36."

June 18, 2020, it learned of the National Vision-Continental Casualty Policy. (Def.'s 56.1 ¶ 16; Harding Decl. ¶ 16.)

On June 19, 2020, Wesco Insurance tendered Roosevelt Realty's defense and indemnification in the Underlying Action to Continental Casualty. (Wesco Ins. Ltr. to Cont'l Cas. Dated 6/19/2020 (Dkt. 35-33) at 2.) In its letter, Wesco Insurance stated that its investigation had "reveal[ed]" that National Vision "was a tenant at the property" located at 102-19 Roosevelt Avenue and demanded "defense, indemnification and insurance coverage" for Roosevelt Realty "under the general liability and umbrella policies for National Vision Care Inc's [sic] based on the provisions in the lease agreement." (*Id.* at 1, 2.) Wesco Insurance also shared its "belief" that Continental Casualty was "obligated" to name Roosevelt Realty as an "additional insured" on the National Vision-Continental Casualty Policy. (*Id.* at 2.)

On July 25, 2022, Continental Casualty denied the tenders. (Def.'s 56.1 ¶ 31; Harding Decl. ¶ 18; *see also* Cont'l Cas. Ltr. to Wesco Ins. Dated 7/25/2022 (Dkt. 35-34).) This suit followed.

### B. Procedural History

On May 24, 2024, Plaintiffs filed the Complaint. Relying on the rider's insurance procurement provisions, they seek a declaration that Roosevelt Realty is an "additional insured" on the National Vision-Continental Casualty Policy, (Compl. ¶¶ 16-22), so that Wesco Insurance may recover damages from Continental Casualty in an amount "somewhere in the six-figures," (Pls. Ltr. to the Ct. Dated 7/9/2024 (Dkt. 12) at 3).

On January 27, 2026, the parties cross-moved for summary judgment.

In its motion, Continental Casualty seeks an order dismissing the Complaint with prejudice. (Def.'s Mot. at 2.) Continental Casualty argues that it has "no duty or obligation under the [National Vision-Continental Casualty] Policy, the lease, or the rider to

lease, to defend Roosevelt [Realty]" in the Underlying Action because the "clear and unambiguous" terms of the subject policy, lease, and rider show that "there is no written contract by National [Vision]" (as opposed to Ms. Chevres individually) to name Roosevelt Realty an "additional insured" on the National Vision-Continental Casualty Policy—meaning that the Policy's blanket additional insured provision "is not triggered." (*Id.* at 5-7, 9.)

Plaintiffs cross-move, arguing that all requested relief in the Complaint should be granted because the lease was "entered into" by National Vision (not by Ms. Chevres in her own name) and therefore meets the blanket additional insured provision's "written contract or agreement requirement." (Pls.' Cross-Mot. at 13.)

## II. LEGAL STANDARDS

### A. Summary Judgment

When, as here, both parties move for summary judgment, the court must evaluate each motion separately, "examin[ing] each party's motion on its own merits and draw[ing] all reasonable inferences against the party whose motion is under consideration." *Reidy Contracting Grp., LLC v. Mt. Hawley Ins. Co.*, 167 F.4th 44, 51 (2d Cir. 2026).

Rule 56 authorizes summary judgment only if "there is no 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 368 (2d Cir. 2026) (quoting Fed. R. Civ. P. 56(a)). Typically, the "party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Id.* However, "when the burden of proof at trial would fall on the nonmoving party," it is "sufficient for the movant to point to an absence of evidence on an essential element of the non-movant's claim." *Id.*; *see also McKinney v. City of Middletown*, 49 F.4th 730,

738 (2d Cir. 2022) ("[T]he moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.").

In the context of contractual disputes, "summary judgment may be granted only where the language of the contract is unambiguous." *Ross v. Thomas*, 460 F. App'x 16, 17 (2d Cir. 2012) (summary order) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996)); *see also Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 396 (2d Cir. 2023) ("When the resolution of a contract depends on an ambiguous term or phrase, summary judgment should usually be denied and the ambiguity submitted to the factfinder for resolution by resort to the extrinsic evidence.").

### B. New York Contract Law

Under New York law—which controls the interpretation of the subject policy, lease, and rider[6] in this case—"[d]etermining whether a contract is ambiguous is an issue of law for the courts to decide."[7] *Donohue v. Cuomo*, 38 N.Y.3d 1, 13 (N.Y. 2022); *see also Ezrasons*, 89 F.4th at 395 (same).

To assess "whether a contract is ambiguous, the court looks within only the four corners of the document." *Ezrasons*, 89 F.4th

[6] New York state law governs the interpretation of the National Vision-Continental Casualty Policy because the policy was issued in New York, the alleged underlying accident occurred in New York, and the Underlying Action (currently on appeal) is pending in New York. *See Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 214 (2d Cir. 1999); *see also Associated Indus. Ins. Co., Inc. v. Sentinel Ins. Co., Ltd.*, No. 23-CV-1040 (MMG), 2025 WL 1685290, at *5 (S.D.N.Y. June 16, 2025) (same). New York law also governs the interpretation of the lease and rider given the rider's choice of law provision. (Rider at 1, 15.)

[7] Although not relevant in this case, "[i]f the language is ambiguous, *then* resolution of the ambiguity is for the trier of fact." *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (emphasis added).

at 395 (citing *Donohue*, 38 N.Y.3d at 12-13). Evidence outside the contract's four corners "as to what was really intended but unstated or misstated . . . is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Donohue*, 38 N.Y.3d at 12-13. Rather, "[e]xtrinsic or parol evidence is admissible *only if* a court finds an ambiguity in the contract." *Id.* at 13 (emphasis added).

A contract's "provisions are not ambiguous merely because the parties interpret them differently." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (N.Y. 2015). Rather, ambiguity in a contract may arise only when either: (a) "the contract, read as a whole, fails to disclose its purpose and the parties' intent"; or (b) "specific language [in the contract] is susceptible of two reasonable interpretations." *Donohue*, 38 N.Y.3d at 13; *see also Reidy Contracting*, 167 F.4th at 51 (same). In contrast, "[a] contract is unambiguous if the language it uses has a definite and precise meaning." *Donohue*, 38 N.Y.3d at 13. "A written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.*

As relevant here, in insurance coverage disputes, the party claiming coverage "carries the burden of showing that it is covered by a policy." *Reidy Contracting*, 167 F.4th at 51; *see also Chateau GC, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 249 A.D.3d 827, 829 (2d Dep't 2026) (same).

## III. DISCUSSION

To prevail on the claims in their Complaint, Plaintiffs must provide evidence of a "written contract or agreement" under which National Vision (as opposed to Ms. Chevres individually) was "required to add" Roosevelt Realty as an additional insured on the National Vision-Continental Casualty Policy. (Nat'l Vis.-Cont'l Cas. Pol'y at ECF p. 76.) Because Plaintiffs have not done that,

Continental Casualty is entitled to judgment as a matter of law and thus its motion for summary judgment is granted.

Continental Casualty asserts that it has "no duty or obligation under the Policy, the lease, or the rider to lease, to defend Roosevelt [Realty]" in the Underlying Action because the "clear and unambiguous" terms of the lease and rider show that "there is no written contract by National [Vision]" (rather than Ms. Chevres) to name Roosevelt Realty as an "additional insured" on the National Vision-Continental Casualty Policy. (Def.'s Mot. at 5-7.) Specifically, Continental Casualty argues that the blanket additional insured provision "is not triggered" because "[t]he Lease and Rider [were] executed by Mariangelique Chevres, individually, not by National [Vision]." (*Id.* at 9.)

Opposing the motion, Plaintiffs respond saying that "[i]t is indisputable that National Vision entered the Lease" because "the facts on the record"—specifically, sworn deposition testimony from Mr. Florimon and Ms. Chevres, language in the lease regarding the premises' "use[] as an optical boutique," and statements in Continental Casualty's letter to Wesco Insurance rejecting the tenders—"show dispositively that National Vision [and *not* Ms. Chevres] entered into the Lease with Roosevelt [Realty]." (Pls.' Opp. at 1-3).

Continental Casualty replies that Plaintiffs' "assertion is demonstrably false given the plain, complete, clear, and unambiguous terms of the Lease and Rider," which "expressly and unambiguously identify only Mariangelique Chevres as the Tenant." (Def.'s Reply at 1.)

"To resolve the coverage dispute," the court will "first look to the language of the policy." *Reidy Contracting*, 167 F.4th at 51 (quoting *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 681 (N.Y. 2017)). But when, as here, the claimed

coverage depends on a policy's "blanket additional insured provision" and that provision requires "a written contract or agreement" to extend coverage, New York state law is clear: "in deciding the ultimate question"—whether the party claiming coverage is an additional insured under the subject policy—the court "need only determine whether, under the [proffered 'written contract or agreement'], [the named insured] was required to ensure that [the party claiming coverage] received general liability insurance coverage equivalent to the coverage [the named insured] enjoyed." *Kassis v. Ohio Cas. Ins. Co.*, 12 N.Y.3d 595, 600 (N.Y. 2009); *see also Travelers Prop. Cas. Co. of Am. v. Netherlands Ins. Co.*, No. 21-CV-6061 (PAE), 2023 WL 2339898, at *10-11 (S.D.N.Y. Mar. 1, 2023) (applying the same rule). If the terms of the proffered "written contract or agreement" are unambiguous, then their plain meaning dictates coverage. *See Kassis*, 12 N.Y.3d at 600-01; *see also Ezrasons*, 89 F.4th at 394-95 ("[U]nambiguous provisions are given their plain and ordinary meaning.").

Here, Plaintiffs point to one "written contract or agreement": the lease—which, as mentioned, incorporates and attaches the rider. Thus, the court "need only" analyze the terms of the lease and rider to determine whether, under the lease, National Vision (as the named insured on the National Vision-Continental Casualty Policy) was required to ensure that Roosevelt Realty (as the party claiming coverage) received general liability insurance coverage equivalent to the coverage National Vision enjoyed. *Kassis*, 12 N.Y.3d at 600.

As Plaintiffs correctly point out, the rider identifies certain obligations of "the Tenant," including that "the Tenant will, at all times during the term of this Lease and at the Tenant's own cost and expense, in the name and for the benefit of the Landlord and the Tenant, maintain comprehensive general public liability insurance against loss by reason of bodily injury." (Rider at 4-5.)

Because "the Tenant" is a defined contractual term, the success of Continental Casualty's motion turns on whether the lease is ambiguous as to the identity of the contracting parties and the meaning of the term "the Tenant."

A plain reading of the lease and rider reveals one reasonable interpretation: the contracting parties are Roosevelt Realty and Ms. Chevres (not National Vision) and the term "the Tenant" refers only to Ms. Chevres (rather than to National Vision).

The lease begins by stating that it was "made" "between 102-19 Roosevelt Realty, LLC [Roosevelt Realty], 102-19 Roosevelt Ave, Corona, NY 11368 hereinafter referred to as LANDLORD, and Mariangelique Chevres, residing at [personal address] hereinafter jointly, severally[,] and collectively referred to as TENANT." (Lease at 1.) Likewise, the rider states that it was entered "by and between 102-19 Roosevelt Realty, LLC [Roosevelt Realty] as Landlord and Mariangelique Chevres, as Tenant." (Rider at 1.) And while the lease and rider were each signed by Mr. Florimon on behalf of Roosevelt Realty, the agreements unambiguously show that they were signed by Ms. Chevres in her own name (*not* 'on behalf of' National Vision). The lease's signature page states "the Landlord and Tenant have respectively signed and sealed these presents" and then provides two signature lines: the first for the "Landlord," which states "102-19 Roosevelt Realty, LLC [Roosevelt Realty] by Hector B. Florimon, Managing Member"; the second for the "Tenant," which states "Mariangelique Chevres." (Lease at 4.) Similarly, the rider's signature page provides two signature lines: the first for "LANDLORD," which states "102-19 Roosevelt Realty, LLC [Roosevelt Realty] by Hector B. Florimon, Member"; the second for "TENANT," which states "Mariangelique Chevres." (Rider at 26.)

Furthermore, nowhere in the four corners of the lease, including the attached rider, is National Vision identified or mentioned. On the face of these documents, it's as if National Vision does not

exist. Therefore, read as a whole and according to its plain terms, the lease is complete, clear, and unambiguous: Ms. Chevres (not National Vision) is "the Tenant" and the contracting party. *Cf. Hanover Ins. Co. v. Catlin Specialty Ins. Co.*, 218 A.D.3d 754, 755 (2d Dep't 2023) (in insurance coverage dispute, first finding that the proffered written agreement "unambiguously" identified a corporation's individual owner as the "only [contracting] party" because the corporation was "not mentioned" in the agreement; and then confirming that the trial court had properly applied the policy's additional insured language only to that individual owner "without reference to the extrinsic evidence").

Moreover, Plaintiffs offer no basis to conclude from the four corners of the lease that it is ambiguous.

First, Plaintiffs "admit" that Ms. Chevres "signed the Rider" but "deny that she did so in her individual capacity" because Mr. Florimon's and Ms. Chevres's "sworn deposition testimony is that National Vision entered into the Lease." (Pl.'s 56.1 ¶ 30 (internal citations omitted).) But this testimony is irrelevant. *Donohue*, 38 N.Y.3d at 12-13 ("[Extrinsic] evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."). Because the lease and rider expressly and unambiguously identify Roosevelt Realty and Ms. Chevres individually as the contracting parties, define only Ms. Chevres individually as "the Tenant," and do not mention National Vision, the court disregards all extrinsic evidence provided by Plaintiffs in an attempt to show that contrary to the plain language, the parties "*intended* the Lease to pertain to National Vision not Ms. Chevres individually," (Pls.' Opp. at 2 (emphasis added)). *Cf. Hanover Ins. Co.*, 218 A.D.3d at 755.

Second, Plaintiffs' reliance on *150 Broadway N.Y. Assocs., L.P. v. Bodner*, 14 A.D.3d 1 (1st Dep't 2004) to argue that "[u]nder

nearly identical facts, the New York Appellate Division determined a professional corporation entered into a lease despite the omission of P.C. from the tenant identification and signature pages" does not alter the court's conclusion. (Pls.' Opp. at 1.)

In *Bodner*, the court was confronted with an "office lease signed by Bodner and Waldinger" that defined "the tenant" as "'Bodner & Waldinger,' without use of the abbreviation 'P.C.'" 14 A.D.3d at 2. As a matter of law, the court concluded that the lease's terms established that "the tenant" was the professional corporation Bodner & Waldinger, P.C. rather than the individual officers with the same surnames (the defendants, Mark L. Bodner and Jesse S. Waldinger) because: (1) the lease contained a "Corporate Tenant's Representations" section and a personal-guaranty provision which would only have "meaning . . . if the tenant under the lease [was] a corporation"; and (2) the signatures differed from the corporation's formal name only by "the omission of the abbreviation, P.C." *Id.* at 6-7.

Here, by contrast, there is nothing in the lease that would support the interpretation that "the Tenant" refers to the corporation (National Vision) rather than to the individual (Ms. Chevres). First, the lease and rider do not contain provisions that would only have meaning if "the Tenant" was a corporation. Contrary to Plaintiffs' suggestions, the rider's requirement that the premises "be used as a an [sic] 'optical boutique store,'" (Pls.' Opp. at 2), does not lose its meaning if "the Tenant" is Ms. Chevres individually (and not National Vision). The court is aware of no state law requirement that an optical retail store be operated by a corporate entity rather than an individual. In fact, Section 7106 of the New York Education Law provides:

> Eyeglasses or lenses for the correction of vision or non-corrective contact lenses may be sold by any *person*, firm or corporation at retail, only on prescription of a licensed physician or licensed

> optometrist and only if a licensed physician, optometrist or ophthalmic dispenser is in charge of and in personal attendance at the place of sale.

N.Y. Educ. Law § 7106(2) (emphasis added). Second, unlike the signature page of the lease in *Bodner*, the signature pages of the lease and rider give zero indication of National Vision's existence. For these reasons, *Bodner* is inapposite to the present case.

Finally, the court is not persuaded by Plaintiffs' claims that, in the Underlying Action, the state trial court "determined that National Vision entered the Lease," (Pls.' 56.1 ¶ 30), and "determined that National Vision is the Premises [sic] tenant through the lease agreement," (Pls.' Opp. at 3 n.3). On March 10, 2025, the state court issued an order denying Roosevelt Realty's motion for summary judgment on its crossclaims against National Vision for contractual and common law indemnification and granting National Vision's motion for summary judgment on the issue of liability and for the dismissal of both the underlying complaint and Roosevelt Realty's crossclaims because, the court concluded, National Vision "did not have a duty to maintain the sidewalk" under the lease and there was "no demonstration" that National Vision had "made special use of the sidewalk or created the alleged defect therein." (Underlying Order Dated 3/10/2025 (Dkt. 35-42) at 1-2 (internal quotation marks omitted).) In the Underlying Action, the parties did not dispute that National Vision was the premises' tenant. Unlike here, the definition of the contractual term "the Tenant" was neither briefed by the parties in their respective motions for summary judgment nor addressed by the court in its order. (Nat'l Vision's Underlying Mot. for Summ. J. Dated 10/10/2024 (Dkt. 35-41); Underlying Order.) Thus, contrary to Plaintiffs' claims, there was no occasion for the underlying state trial court to "determine" the issue of the meaning of the term "the Tenant" as used in the lease and rider.

In sum, Plaintiffs fail to provide evidence of a written contract or agreement under which National Vision (as opposed to Ms. Chevres individually) was required to name Roosevelt Realty as an additional insured on the National Vision-Continental Casualty Policy. By pointing to the absence of evidence on this essential element of Plaintiffs' claims, Continental Casualty has met its burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *McGucken*, 166 F.4th at 368.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment and DISMISSES the Complaint WITH PREJUDICE. Plaintiffs' cross-motion for summary judgment is therefore DISMISSED AS MOOT. The Complaint having been dismissed with prejudice, the Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 22, 2026

s/Nicholas G Garaufis, USDJ
NICHOLAS G. GARAUFIS
United States District Judge